UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL E. ENGLER,

                              Plaintiff,
                v.                            **DECISION AND ORDER**
                                                                10-CV-968S

ATLANTIC RESOURCE MANAGEMENT, LLC,

                              Defendant.

## I. INTRODUCTION

On November 30, 2010, Plaintiff Michael E. Engler filed a complaint alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Defendant failed to appear and defend this action, which resulted in the Clerk of the Court entering default on May 12, 2011. Presently before this Court is Plaintiff's motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion is granted.

## II. BACKGROUND

Plaintiff Michael E. Engler is a resident of Erie County, New York. (Comp., Docket No. 10-2, ¶ 4.) Defendant Atlantic Resource Management, LLC ("Atlantic") is engaged in the business of debt collection and was employed by Bank of America to collect a debt Engler allegedly incurred and defaulted on. (Comp. ¶ 10.) On November 2, 2010, Atlantic called Engler's place of work and spoke to his supervisor. (Comp. ¶ 11.) Atlantic inquired into what company policy was regarding execution of a warrant and asked Engler's supervisor to call Atlantic concerning "Case Number 37291NY0969." (Id.) Atlantic also

stated that Engler would have only three hours following the start of his next shift to contact Atlantic and stop process. (Id.)

The following day as Engler was preparing to begin his shift his supervisor informed him of the details of the call. (Id.)

### III. DISCUSSION

**A.      Default Judgment Standard**

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. See Fed. R. Civ. P. 55(a). Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In considering whether to enter default judgment, the court must determine whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. See Fed. R. Civ. P. 55(b)(2). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence presented are drawn in the moving party's favor. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

**B.     Liability**

    **1.     Statutory Damages**

Plaintiff claims violations of numerous provisions of the FDCPA, including sections 1692b(1) and 1692c(b), 1692d and 1692d(2), as well as 1692e, 1692e(2)(A), (4), (5), (7), (10), and 1692f.

Section 1692b of Title 15 requires that any debt collector communicating with any person other than the person owing the debt shall "(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer."

Further, 15 U.S.C. § 1692c(b) provides in part that:

> [A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Section 1692d of Title 15 provides as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>                          \*   \*   \*
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

Section 1692e also prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt. That statute prohibits:

> (2) The false representation of - (A) the character, amount, or legal status of any debt . . . .

\* \* \*

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

\* \* \*

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

\* \* \*

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Finally, section 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt.

Plaintiffs allege that Atlantic violated 1692b(1) and 1692c(b) by failing to limit the subject of their communications with Engler's supervisor to obtaining information regarding his location. 1692d and 1692d(2) were allegedly violated when Atlantic inquired into the company's policy on executing warrants, asked the supervisor to tell Engler to contact Defendant to speak about his case, and giving Engler only three hours after the start of his next shift to contact Atlantic. For principally the same reasons, Plaintiff alleges Atlantic violated 1692e, and 1692e(2)(A), (4), (5), (7), and (10). Further, Engler alleges that Atlantic's conduct constitutes unfair or unconscionable means of attempting to collect a debt because it conveyed the false impression that Engler was a criminal who would be

arrested and had a case pending. Based on the undisputed facts taken as true, this Court finds that Atlantic violated these sections as alleged.

Section 1692k(a)(2)(A) authorizes up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA. The specific amount of statutory damages, not to exceed $1,000, falls within the court's discretion. See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998). Factors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, the debt collector's resources, the number of individuals adversely affected, and the extent to which the debt collector's non-compliance was intentional. See 15 U.S.C. § 1692k(b)(1).

Here, Atlantic is deemed to have admitted calling Engler's workplace and giving it false information that made Engler out to be a criminal who would be arrested while at work. No other instances of conduct violating the FDCPA is provided, but, in this Court's view, the involvement of not only a third party, but Plaintiff's employer makes this a particularly egregious violation.

Plaintiff's counsel requests the statutory maximum of $1,000 in damages. Although that amount is excessive, under these circumstances this Court finds that the violations against Engler entitle him to $500 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A). See Hoover v. W. N.Y. Capital, No. 09-CV-955A, 2010 WL 2472500, at *2 (W.D.N.Y. June 16, 2010) (awarding plaintiff $500 where defendant engaged in frequent harassing communications, involved third parties without authorization, and targeted plaintiff's place of work); cf. Robbins v. Viking Recovery Servs. LLC, No. 09-CV-1030A, 2010 WL 1840318, at *2 (W.D.N.Y. May 7, 2010) (awarding plaintiff $1,000 where

defendant targeted plaintiff's place of work despite knowing that plaintiff's employer prohibited such telephone calls, as well as harassing plaintiff, and contacting third parties without permission); Healy v. Midpoint Resolution Group, LLC, No. 09-CV-117S, 2010 WL 890996, at *2-*3 (W.D.N.Y. Mar. 10, 2010) (awarding plaintiff $1000 in statutory damages where defendant called him at home on more than one occasion, falsely represented that it had commenced lawsuit, spoke with plaintiff's daughter about debt, and attempted to contact plaintiff after being notified to contact counsel).

### 2. Actual Damages

Section 1692k(a)(1) authorizes an award of "any actual damage sustained by [any] person as a result of [a defendant's violation of the FDCPA]." "Actual damages are intended to compensate a plaintiff for "out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from a defendant's failure to comply with the FDCPA." See Mostiller v. Chase Asset Recovery Corp., No. 09-CV-218A, 2010 WL 335023, at *3 (W.D.N.Y. Jan. 22, 2010) (quoting Milton v. Rosicki, Rosicki & Assocs., P.C., No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007)).

Plaintiff requests an award of $2,500 in actual damages, based on his claims of embarrassment at work, and concerns over how Atlantic's call would affect his job status and his supervisor's perception of him. Engler argues that as a result of Atlantic's call he was ultimately transferred to a new location and terminated.

Although the complaint lacks sufficient factual allegations to make clear whether Engler lost his job as a result of Atlantic's call, there is no question that his feelings of discomfort, embarrassment, fright, and emotional distress are commensurate with

Atlantic's conduct. Defendant's act influenced how Engler's employer viewed him and left Engler fearing that he might be arrested at his workplace. Thus, this Court finds that actual damages of $1,500 is fair and appropriate compensation. See Annis v. E. Asset Mgmt., LLC, No. 08-CV-458S, 2010 WL 1035273, at *6 (W.D.N.Y. Mar. 18, 2010) (awarding $1,500 each to husband and wife where defendant's conduct caused deterioration in marital relationship); Pearce v. Ethical Asset Mgmt., Inc., No. 07-CV-718S97, at *5 (W.D.N.Y. Mar. 11, 2010) (awarding plaintiff $750 in actual damages where defendant's conduct caused plaintiff to experience embarrassment in front of family members and mental distress that lasted several months).

### 3.     Attorney's Fees and Costs

The FDCPA provides for the recovery of reasonable attorney's fees and costs by successful litigants. See 15 U.S.C. § 1692k(a)(3) (permitting recovery of, "in the case of any successful motion to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court").

In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts. Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific considerations to arrive at a "reasonable fee"), with the method developed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (which considered twelve

specific factors to arrive at the "reasonable fee"). Arbor Hill, 493 F.3d at 114. "Relying on the substance of both approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'" Simmons, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee." Arbor Hill, 493 F.3d at 117.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotations omitted). After Arbor Hill, the presumptively reasonable fee is "what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively." 493 F.3d at 112, 118.

To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19.

Finally, a district court must consider that a client may be able to negotiate with his

or her attorneys, based on their desire for the reputational benefits that could accrue from association with the case. Arbor Hill, 493 F.3d 119.

Plaintiff's attorney, Frank J. Borgese, practices law in this district and has spent his career working in consumer rights and in FDCPA matters. Given his experience, and in light of this Court's previous decision, his request for compensation of $180 per hour is reasonable. See Coles v. Lieberman, Michaels & Kelly, LLC, No. 10-CV-484S, 2011 WL 3176467, at *5 (W.D.N.Y. July 27, 2011) (finding Borgese's $180 per hour fee reasonable). Further, the 10.4 hours of attorney-time, and .9 hours secretarial/paralegal work, billed for this case are reasonable. See id. (limiting recovery to 15 hours where Defendant did not appear and attorney was experienced in consumer rights and FDCPA matters). Accordingly, this Court will award 10.4 hours of attorney time at $180 per hour, for $1,872 in attorney's fees. This Court will also award $54 in secretarial/paralegal fees, $350 for the filing fee, and $135 for service of process.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is granted. Plaintiff is awarded $500 in statutory damages and $1,500 in actual damages. Additionally, Plaintiff is awarded $2,411 for attorney's fees and costs.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Default Judgment (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to enter judgment in favor of Plaintiff

in the amount of $4,411.

FURTHER, that the Clerk of Court shall close this case upon entry of judgment.

SO ORDERED.

Dated:     February 10, 2012
           Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court
